UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re<br><br>NUTRIOM, LLC<br><br>Debtor. | No. 13-46221<br><br>ORDER AUTHORIZING USE OF CASH COLLATERAL AND AUTHORIZATION FOR POSTPETITION BORROWING |

THIS MATTER came before the Court on the Motion of Nutriom, LLC, debtor-in-possession herein ("Debtor"), for authority to use Cash Collateral and authorization to enter into postpetition borrowing agreement ("Motion") to following facts and to the form and entry of this order:

1. On October 1, 2013 (the "Petition Date") Debtor filed a Voluntary Petition for relief under Chapter 11 of Title 11 of the United States Code.

ORDER AUTHORIZING USE OF CASH
COLLATERAL- 1

BUDSBERG LAW GROUP, PLLC
P.O. Box 1489
Olympia, Washington 98507
360-584-9093

2. Debtor has continued in possession of its property and is continuing to operate and manage its business as Debtor-in-Possession pursuant to 1107 and 1108 of Title 11 of the United States Code. No trustee or examiner has been appointed in Debtor's case.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. No request has been made for the appointment of a trustee or examiner, and no unsecured creditors' committee has yet been established in this case.

6. Debtor and Community State Bank are parties to various loan agreements, security agreements and financing statements (the "Loan Documents"). Debtor believes that Community State Bank retains a first position pre-petition security interest in Debtor's accounts, general intangibles, inventory, equipment, and chattel paper. Debtor and South Sound Bank are parties to various loan agreements, security agreements and financing statements (the "Loan Documents). Debtor believes that South Sound Bank retains a second position pre-petition security interest in Debtor's All Inventory, Chattel Paper, Accounts, Equipment, Fixtures and General Intangibles. Debtor and Export-Import Bank of the United States are parties to various loan agreements, security agreements and financing statements (the "Loan Documents). Debtor believes that Export-Import Bank of the United States retains a third position pre-petition security interest in Debtor's All Inventory, Chattel Paper, Accounts, Equipment, Fixtures and General Intangibles.

7. As of September 24, 2013, Debtor estimates its obligation to Community State Bank totaled approximately $950,000.00, including principal, interest, fees, and costs. Additionally, as of September 24, 2013, Debtor estimates its obligation to South Sound Bank

ORDER AUTHORIZING USE OF CASH
COLLATERAL- 2

BUDSBERG LAW GROUP, PLLC
P.O. Box 1489
Olympia, Washington 98507
360-584-9093

Case 13-46221-PBS    Doc 2-1    Filed 10/02/13    Ent. 10/02/13 12:40:28    Pg. 2 of 12

totaled approximately $4,876,000.00, including principal, interest, fees, and costs. Debtor estimates its obligation to Export-Import Bank of the United States totaled approximately $500,000.00. The aggregate amount of all obligations owing by Debtor to Community State Bank, South Sound Bank, and Export-Import Bank of the United States as of the Petition Date is referred to herein as the "Existing Indebtedness".

8. Without use of the Cash Collateral of Community State Bank, South Sound Bank, Export-Import Bank of the United States (hereinafter the "Banks"), Debtor is without sufficient funds to support its continuing operations. Debtor seeks to use the Banks' Cash Collateral to pay its operating expenses pursuant to §§ 105(a) and 363(c)(1) and (2) of the Code.

9. It is in the best interest of Debtor, its creditors, and its estate for Debtor to use the Banks' Cash Collateral because the use of the Banks' Cash Collateral will allow the continued operation of Debtor as a going concern and will maximize the likelihood of reorganization, thereby maximizing the recovery to all creditors.

10. To preserve the value of Debtor as a going concern and to preserve and maintain the assets of the bankruptcy estate, Debtor requires the use of the Banks' Cash Collateral.

11. Debtor will suffer immediate and irreparable harm if it is not permitted to use the Banks' Cash Collateral. Without use of the Banks' Cash Collateral, Debtor's operations will need to immediately cease.

12. In addition to the use of Cash Collateral of the Banks, Debtor requires the immediate investment of $200,000 to insure Debtor can meet its postpetition payroll and ongoing daily expense obligations as set forth the attached proposed budget. **See Exhibit A: Debtor's proposed budget.** Debtor is asking the Court to authorize Debtor to enter into a postpetition borrowing agreement with Debtor's principal Hernan Etcheto whereby Hernan Etcheto will lend

ORDER AUTHORIZING USE OF CASH COLLATERAL- 3

BUDSBERG LAW GROUP, PLLC
P.O. Box 1489
Olympia, Washington 98507
360-584-9093

Case 13-46221-PBS    Doc 2-1    Filed 10/02/13    Ent. 10/02/13 12:40:28    Pg. 3 of 12

$200,000 to Debtor and in exchange Hernan Etcheto will receive an administrative priority position pursuant to 11 U.S.C. § 503(b). Without approval of the borrowing of $200,000 from Hernan Etcheto, Debtor will not be able to meet its payroll obligations and Debtor's operations will need to immediately cease.

NOW THEREFORE, THE COURT BEING FULLY ADVISED IN THE PREMISES, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. <u>Incorporation.</u> The foregoing stipulations are hereby restated and incorporated herein by this reference.

2. <u>Authorization to Use Cash Collateral.</u>

(a) Debtor is authorized to use the Banks' cash collateral in accordance with the terms and conditions set forth herein.

(b) The Banks' Cash Collateral shall be used only for purposes and up to the amounts listed in the budget attached as Exhibit A (the "Approved Budget"); provided, however, that the Debtor's total expenditures may not exceed the aggregate budgeted amount by more than 20%. In return the Debtor will resume paying the prepetition monthly payments to Community State Bank the amount of $3,812.50, South Sound Bank in the amount of $38,716.77, and Export-Import Bank of the United States in the amount of $1,645.83 on or before the last day of the month beginning in February of 2014 until Debtor's plan of reorganization is confirmed.

(c) All existing Cash Collateral and all post-petition receipts shall be deposited in a segregated Debtor-in- Possession Cash Collateral Account to be established at Bank (the "Cash Collateral Account"). Debtor is authorized to draw upon or transfer funds from the Cash Collateral Account to its Debtor-in-Possession General Operating Account at Washington Federal for use in accordance with the terms of this Order.

ORDER AUTHORIZING USE OF CASH COLLATERAL- 4

BUDSBERG LAW GROUP, PLLC
P.O. Box 1489
Olympia, Washington 98507
360-584-9093

Case 13-46221-PBS    Doc 2-1    Filed 10/02/13    Ent. 10/02/13 12:40:28    Pg. 4 of 12

3. <u>Grant of Security Interest.</u>  An adequate protection for use of the Banks' Cash Collateral pursuant to §§ 361(2) and 363(c)(1) and (2) of the Code, the Banks' are hereby granted liens and security interests (as the case may be) upon all property of the estate as defined in § 541(a) of the Code (excluding property recovered through exercise of the powers granted under Sections 506(c), 544, 545, 547, 548, and 549 of the Code (the "Excluded Property") that is of the same of the same category, kind, type, character and description as were subject to perfected and valid security interests in existence as of the Petition Date.  Except for the Excluded Property, the property securing the use of the Cash Collateral includes, but is not limited to, all existing and after-acquired property of the Debtor's estate and Debtor's accounts receivable, whether now existing or hereafter arising, whether real or personal, tangible or intangible, whether any such property is now owned or hereafter acquired or existing, and all records (including computer software) pertaining to the foregoing, and substitutions for, all proceeds, and all products of all of the foregoing, to the fullest extent permitted by law, including, without limitation, all insurance policies insuring property of Debtor, or any part thereof, and proceeds of said insurance, including unearned premiums that is of the same category, kind, type, character and description as were subject to perfected and valid security interests in existence as of the Petition Date (all of the above described property is hereafter referred to collectively as "Adequate Protection Collateral").  The Banks' replacement security interest in and lien upon the assets from and after the Petition Date shall be of the same category, type, kind, character and description as the assets that were subject to perfected and valid security interests in existence as of the Petition Date.  The liens and security interests granted herein shall secure the impairment, if any, of the value of the interest granted herein shall secure the impairment, if any, of the value of the interest of the Banks' in Cash Collateral, and will have

ORDER AUTHORIZING USE OF CASH
COLLATERAL- 5

BUDSBERG LAW GROUP, PLLC
P.O. Box 1489
Olympia, Washington 98507
360-584-9093

Case 13-46221-PBS    Doc 2-1    Filed 10/02/13    Ent. 10/02/13 12:40:28    Pg. 5 of 12

the same relative priority as any valid and unavoidable liens held by the Banks as of the Petition Date, but shall not be construed to enhance or improve the position of the Banks.

4. <u>Professional Carve out.</u> The granting of the security interest as stated in paragraph 3 of this Order shall be subordinate only to the to a carve-out for the payment of the allowed claims of professionals on behalf of Debtor or any Committee whose employment is approved by this Court, (the "Professional Carve-Out"). The Professional Carve-Out shall be $10,000.00 per month for the period of this cash collateral order until a plan of reorganization is confirmed.

5. <u>Order is Security Agreement.</u> This Order shall be deemed to be and shall constitute a security agreement under the applicable provision of the Uniform Commercial Code ("UCC") in effect from time to time in the states in which Debtor (a) is domiciled, (b) operates its business, and (c) maintains its principal place of business. The liens and security interests created by this Order are perfected by operation of law upon entry of this Order by the Court. The Banks shall not be required to file financing statements, deeds of trust, or take any action to validate or perfect such liens and security interests. If the Banks choose to file financing statements or other documents or otherwise confirm perfections of such liens and interests, Debtor is hereby authorized and directed to execute any other security agreement, UCC-1 financing statements, and supporting documents as may be reasonably requested by the Banks to document any adequate protection liens provided and permitted by this Order. Debtor shall cooperate with the Banks in executing such other documentation as the Banks deem reasonably necessary to effectuate the terms of this Order.

6. <u>Authorization for Postpetition Borrowing and Granting of Administrative Priority</u>. Debtor is authorized, pursuant to 11 U.S.C. §§ 364 and 503(b) to enter into a lending agreement with Debtor's principal owner Hernan Etcheto in which Hernan Etcheto will lend Debtor

ORDER AUTHORIZING USE OF CASH COLLATERAL- 6

BUDSBERG LAW GROUP, PLLC
P.O. Box 1489
Olympia, Washington 98507
360-584-9093

Case 13-46221-PBS    Doc 2-1    Filed 10/02/13    Ent. 10/02/13 12:40:28    Pg. 6 of 12

$200,000.00 which will be used to pay Debtor's payroll and other ongoing expenses. Hernan Etcheto will receive an administrative priority pursuant to 11 U.S.C. § 503(b).

7. <u>Survival.</u> The provisions of this Order shall be binding upon and inure to the benefit of Debtor, the Banks, and their respective successors and assigns.

8. <u>Insurance and Audits.</u> Debtor shall insure Pre-Petition Collateral and the Adequate Protection Collateral for full insurable replacement value thereof with insurance companies acceptable to the Banks. Debtor will provide the Banks with certificates of insurance evidencing Debtor's compliance with the insurance requirements herein provided and the Banks may purchase said insurance and charge the expense thereof to Debtor if it fails to obtain and maintain the insurance as herein provided.

9. <u>Additional Duties of Debtor.</u> Debtor is hereby directed to deliver to the Banks such financial and other information concerning the business and affairs of Debtor and any of the Pre-Petition Collateral and Adequate Protection Collateral as Bank shall reasonably request from time to time.

10. <u>Events of Default.</u> Each of the following shall be an Event of Default under this Order: (a) spending more than 20% more than the amount allowed in the Budget and in this Order unless agreed by the Banks in writing; (b) failure to comply with any of the obligations imposed by this Order; (c) appointment of a Chapter 11 trustee; (d) conversion of this case to a case under a Chapter 7 of the Code; and (e) dismissal of this case. The Banks Savings may request a hearing to take place within five (5) days in the event that it believes Debtor is in Default within the terms of this order.

11. <u>Termination Date and Enforcement of Event of Default.</u> Unless terminated earlier, Debtor's authority to use the Cash Collateral shall be granted on final basis and shall

ORDER AUTHORIZING USE OF CASH COLLATERAL- 7

BUDSBERG LAW GROUP, PLLC
P.O. Box 1489
Olympia, Washington 98507
360-584-9093

Case 13-46221-PBS    Doc 2-1    Filed 10/02/13    Ent. 10/02/13 12:40:28    Pg. 7 of 12

continue until a plan of reorganization is confirmed with the Court. At the end of which time the court shall conduct a hearing to determine the Debtor's authority to use Cash Collateral of the Banks during the pendency of this bankruptcy case. Notwithstanding the foregoing, Debtor's right to use Cash Collateral in the case of an Event of Default specified above in paragraph 10 shall terminate at the end of the tenth business day following delivery of service in accordance with the ECF rules of this Court by the Banks to Debtor, its counsel, the United States Trustee, and counsel to any official committees in the case of a notice of default. Debtor's authority to use the Cash Collateral shall cease without further action unless the Banks have acknowledged within said 10-day period that the specified event of default has been cured or the Court orders otherwise. Nothing herein shall constitute waiver of the Debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of Bank's consent.

12. <u>Validity of Liens.</u> All liens and priorities granted to the Banks hereunder shall be valid and enforceable obligations of Debtor against any subsequent Chapter 11 or Chapter 7 trustee in the same nature and extent as those liens and priorities existing prior to the filing of the Debtor's petition for bankruptcy. The obligations and rights of Debtor and the Banks under this Order, and any documents executed pursuant to paragraph 5 hereof, and the priorities, liens, and perfected security interests granted herein, shall remain unimpaired and unaffected by any modification, reversal, or vacation of this Order on appeal, or by any termination or any curtailment of lending hereunder. Nothing contained herein, however, shall serve to adjudicate the validity, perfection, attachment, priority, or enforceability, or improve the position of, any of the Existing Indebtedness under the Loan Documents or the Existing Liens.

ORDER AUTHORIZING USE OF CASH COLLATERAL- 8

BUDSBERG LAW GROUP, PLLC
P.O. Box 1489
Olympia, Washington 98507
360-584-9093

Case 13-46221-PBS    Doc 2-1    Filed 10/02/13    Ent. 10/02/13 12:40:28    Pg. 8 of 12

13. <u>Amendments.</u>  Nothing herein shall prohibit Debtor and the Banks from amending the terms of the use of Cash Collateral authorized hereby mutual agreement and further order of the Court after notice and hearing.

14. <u>Miscellaneous Provisions.</u>

(a) <u>Modification of Stay.</u>  The automatic stay of Code §362 is hereby modified with respect to the Banks to the extent necessary to effectuate the provisions of this Order.

(b) <u>Financial Information; Insurance.</u>  Debtor is directed to allow the Banks access to the Pre-Petition Collateral and Adequate Protection Collateral for the purpose of enabling it to inspect and audit the collateral and the books and records of Debtor. Such access for such purpose shall be permitted during normal business hours and upon reasonable notice. Debtor shall provide weekly financial statements to the Banks Savings, by 5:00 p.m. of every Friday during the term of this Cash Collateral Order.

(c) <u>Compliance with Local Rules.</u>  The Debtor Motion for use of Cash Collateral and this Order is in compliance with Local Bankruptcy Rule 4001-2 for use of Cash Collateral and Appendix A of said local rules.

(d) <u>Order.</u>  This Order shall be binding on all parties in interest in this case and their respective successors and assigns, including, without limitation, any Chapter 11 or 7 trustee. If any or all of the provisions of this Order are hereafter modified, vacated, or stayed by subsequent order, such action shall not affect the priority, validity, enforceability or effectiveness of any lien, security interest, or priority authorized hereby with respect to the use of Cash Collateral prior to the effective date of such subsequent order (and all such liens, security interests, priorities and other benefits shall be governed by the original provisions of this Order).

ORDER AUTHORIZING USE OF CASH COLLATERAL- 9

BUDSBERG LAW GROUP, PLLC
P.O. Box 1489
Olympia, Washington 98507
360-584-9093

Case 13-46221-PBS    Doc 2-1    Filed 10/02/13    Ent. 10/02/13 12:40:28    Pg. 9 of 12

Except as otherwise explicitly set forth in this Order, no third parties intended to be or shall be deemed to be third party beneficiaries of this Order.

/// END OF ORDER///

PRESENTED BY:
BUDSBERG LAW GROUP, P.L.L.C.

By/s/ Benjamin J. Riley
   Brian L. Budsberg, WSBA #11225
   Benjamin J. Riley, WSBA #34949
   Attorneys for NUTRIOM, LLC

ORDER AUTHORIZING USE OF CASH
COLLATERAL- 10

BUDSBERG LAW GROUP, PLLC
P.O. Box 1489
Olympia, Washington 98507
360-584-9093

Case 13-46221-PBS    Doc 2-1    Filed 10/02/13    Ent. 10/02/13 12:40:28    Pg. 10 of 12

# EXHIBIT A

| Week Ending | 10/04/13 | 10/11/13 | 10/18/13 | 10/25/13 | 11/01/13 | 11/08/13 | 11/15/13 | 11/22/13 | 11/29/13 | Oct - Nov Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Production Lbs | | | | | | | | | | |
| Sales Lbs | | | | | | | | | | |
| Gross Sales $$$ | | | | | | | | | | 0 |
| Ave Per lb Sale $$$ | | | | | | | | | | 0 |
| **AR Collections** | | | | | | | | | | |
| --Navy | 24,564 | 8,510 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 145,074 |
| --CONUS | | | | | | | 247,000 | | | 247,000 |
| --Heat&Serve | - | - | | | | | | | | - |
| --Nutriom Mexico | | | | | | 22,000 | | | | 22,000 |
| --Commercial Exports | | | | | | | 0 | | | 0 |
| --Commercial | 4,906 | 1,718 | 30,072 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 102,696 |
| --Commercial Skillets | | | | | | | | | | |
| --Spray Bottles | | | 100,000 | | | | | | | 100,000 |
| --Crystal Mix/Frangible | | | | | | | | | | - |
| --Custom Drying | | | | | | 29,000 | | | | 29,000 |
| --Other (Sealy/Iowa Mgmt) | | | | | | | | | | - |
| **SubTotal AR Collections** | 29,470 | 10,228 | 146,072 | 27,000 | 27,000 | 78,000 | 274,000 | 27,000 | 27,000 | 645,770 |
| | | | | | | | | | | |
| Payroll or PR Taxes | (46,000) | (16,000) | (34,800) | (14,200) | (34,800) | (14,200) | (34,800) | (14,200) | (34,800) | (243,800) |
| Emp. Benefits CIGNA; WDS; VSP; UNUM | (3,366) | | (7,366) | | (7,366) | | (7,366) | | (7,366) | (32,830) |
| Rent | | | | | (16,000) | | | | | (16,000) |
| Normal AP | | (2,131) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (20,000) | (142,131) |
| Whole Egg + Fgt. | | | | | (38,000) | (38,000) | (38,000) | (38,000) | | (152,000) |
| Reduced Chol + Fgt | | | | | | | | | | 0 |
| Liquid Albumen | | | | | | | | | | 0 |
| SDA & Other Ingredients | (342) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (24,342) |
| Packaging Material | (2,019) | | (5,000) | | (5,000) | | (5,000) | | (5,000) | (22,019) |
| Interest & Lease Payments | | | | | | | | | | 0 |
| Unusual AP Items | | | | | | | | | | - |
| --Mexico Expenses | | | | | | | | | | - |
| --Crystal Mix, LLC | | | | | | | | | | - |
| --Legal/Accounting | | | | (20,000) | | | | | (20,000) | (40,000) |
| --Quarterly PR Taxes | | | | (15,000) | | | | | | (15,000) |
| --Nutriom Property Tax | | | | (30,611) | | | | | | (30,611) |
| | | | | | | | | | | - |
| **SubTotal Operations** | (51,727) | (21,131) | (70,166) | (102,811) | (108,166) | (91,200) | (108,166) | (75,200) | (90,166) | (718,733) |
| | | | | | | | | | | |
| **PP&E Items** | | | | | | | | | | 0 |
| --1509.20 G2 Improvements | | | | | | | | | | 0 |
| --1509.22 Bossar | | | | | | | | | | 0 |
| --1509.47 MCD Carts & Belt Upgrade | | | | | | | | | | 0 |
| --1509.57 Quardo Sifter | | | | | | | | | | 0 |
| --1509.58 G2 Alternative Heat | | | | | | | | | | 0 |
| --1509.59 Hayssen Capactity Imps | | | | | | | | | | 0 |
| --1509.61 Maint Tracking Software | | | | | | | | | | 0 |
| --1509.64 G2 Controls DAQ to AB | | | | | | | | | | 0 |
| --1509.65 G2 Belt Tensioning et al | | | | | | | | | | 0 |
| --1509.66 Moisture Analyser | | | | | | | | | | 0 |
| --1509.68 Marion Mixer | | | | | | | | | | 0 |
| --1509.69 Miura Steam Boiler | | | | | | | | | | 0 |
| --1509.71 Air Dryer Compressor | | | | | | | | | | 0 |
| --1509.72 MOCON | | | | | | | | | | 0 |
| --1509.73 MCD Plenum | | | | | | | | | | 0 |
| --1509.74 Pkging Imp Project | | | | | | | | | | 0 |
| --1714 Trident JV Expenses | | | | | | | | | | 0 |
| --Misc Capital Expentures | | | (44,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (68,000) |
| | | | | | | | | | | 0 |
| **Sub Total of PPE Items** | 0 | 0 | (44,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (4,000) | (68,000) |
| **Cash Flow before Borrowing** | (22,257) | (10,903) | 75,906 | (75,811) | (81,166) | (13,200) | 165,834 | (48,200) | (63,166) | (72,963) |
| | | | | | | | | | | |
| SBA at SSB Paydown | | | | | | | | | | 0 |
| SBA Export LOC CommBank | | | | | | | | | | - |
| Ex-Im Bank Loan | | | | | | | | | | |
| Comm State Bank LOC | | | | | | | | | | - |
| **Net Borrowing Activity** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| | | | | | | | | | | |
| **Cash Flow after Borrowing** | (22,257) | (10,903) | 75,906 | (75,811) | (81,166) | (13,200) | 165,834 | (48,200) | (63,166) | |
| Beg Cash Balance | 35,852 | 13,596 | 2,693 | 78,599 | 2,788 | (78,378) | (91,578) | 74,256 | 26,056 | |
| Ending Cash Balance | 13,596 | 2,693 | 78,599 | 2,788 | (78,378) | (91,578) | 74,256 | 26,056 | (37,110) | |